## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DAVID C. CORSON,**
            **Plaintiff,**

**vs.**                                               **CIVIL ACTION NO. 1:09CV65**

**PAUL A.  MATTOX, JR., Secretary of**
**Transportation, West Virginia**
**Department of Transportation,**
**Division of Highways; and**
**ROGER PROPST, Superintendent of Schools,**
**Calhoun County Board of Education,**
            **Defendants.**

## REPORT AND RECOMMENDATION/OPINION

This matter is before the undersigned United States Magistrate Judge pursuant to a referral order entered October 1, 2009 [DE 59].

### I  Procedural History

On the 15th day of May, 2009, Plaintiff, *pro se*, David C. Corson filed his Complaint in this Court against Defendants [DE1].  On June 16, 2009, Defendant Propst filed his Motion to Dismiss [DE 12].  On July 6, 2009, Corson filed a "Memorandum of Law and Precedents in Plaintiffs Defenses Against Motion for Dismissal" [Docket Entry 22].  On July 17, 2009, Defendant Mattox filed a Motion to Dismiss [DE 31]. On September 10, 2009, Plaintiff filed his "Answering Brief with Memorandum of Points and Authorities to Defendant Mattox, Jr. and DOH Motion to Dismiss and Motion for Summary Judgment and Roger Propst Motion to Dismiss and For Summary Judgment" [DE 43].  On September 18, 2009, Defendant Mattox filed a "Reply to the Plaintiff's Response to the Defendants' Motion to Dismiss" [DE 48].  On September 21, 2009, Defendant Propst filed a "Reply to The Plaintiff's Response to Defendant Propst's Motion to Dismiss" [DE 51].

On June 18, 2009, Corson filed a "Memorandum of Points and Authorities on Motion for

Summary Judgment and Injunctive Relief" [Docket Entry 15].  On July 2, 2009, Defendant Mattox filed a Response to Plaintiff's Motion for Summary Judgment [Docket Entry 21].  On July 7, 2009, Defendant Propst filed a Response to Plaintiffs' Memorandum of Points and Authorities on Motion for Summary Judgment and Injunctive Relief [Docket Entry 27].

On September 10, 2009, Plaintiff filed a "First Motion to Amend the Pleadings" [Docket Entry 42].  On September 22, 2009, Defendant Mattox filed a Response to the Motion to Amend [Docket Entry 52].  On September 18, 2009, Defendant Propst filed a Response to the Motion to Amend [Docket Entry 47].  On September 29, 2009, Corson filed a "Memorandum Answer to Defendant's [Mattox] Response to First Motion to Amend the Pleadings" [Reply] [Docket Entry 56].  On October 7, 2009, Corson filed "Plaintiff's Memorandum Response to Defendant's Response to First Motion to Amend the Pleadings" [Docket Entry 72].

On October 14, 2009, Corson filed a "Second Motion to Amend the Pleadings" [Docket Entry 78].

## II.  Background of the Case

The undersigned accepts Plaintiff's allegations as true, for purposes of the defendants' Rule 12(b)(6) motions to dismiss.  Waterford Citizens' Ass'n v. Reilly,  970 F.2d 1287 (4th Cir. 1992). Plaintiff states that he is a 100% Disabled American Veteran, who resided on Little White Oak Road, also known as Calhoun County Road 15/2, "from 1997 to approximately 2004," and then again "from late spring of 2008 to present."  He and his wife have owned the property for the entirety of that time.

On January 26, 1996, before Corson lived at the residence involved in this litigation, the West Virginia Department of Transportation, Division of Highways, purchased the deed to 0.0009

acres for a temporary construction easement, the purpose of which was to begin and complete a project, purported to be the correction of a low water bridge on the road. The project was never completed or even started. The West Virginia Department of Transportation receives Federal Funds for Highway Construction.

Corson moved to the property sometime in 1997. He contends that, because the West Virginia Department of Transportation, Division of Highways never began or completed the project, he found water from the low water bridge flowing down road 15/2 and crossing his driveway eroding the culvert gravel and dirt from around the culverts at times to a depth of 4 feet. Corson complained in writing to the County and State Department of Transportation in 2001 and 2002. In September 2001, James E. Roten, Jr., District Engineer for the Division of Highways, wrote to Corson as follows:

> Apparently back in 1993, the Calhoun County Department of Highways Supervisor Mr. Keith Lynch, had proposed a project to upgrade the low water crossing on County Route 15/2, Little White Oak Road, near the Mildred Lewis residence.
>
> Plans were to replace the existing culverts with two 24-inch culverts. In preparation for this proposed project, right of way was obtained.
>
> This plan of action was to help eliminate the low place in the roadway at the low water crossing. Also, complaints had been received that the county school buses had received damage from crossing this low water crossing.
>
> During this time frame, a new Calhoun County Supervisor was appointed. At that time the proposed project on County Route 15/2, was given a lower priority and was not completed.
>
> The proposed installation of the two 24-inch culverts was not intended to carry the flow of water during flooding conditions, but only to provide an improvement to the grade without creating substantial backwater.

Corson filed a complaint with the U.S. Department of Education Office for Civil Rights in

or about August 2002 ["the OCR Complaint"].  He asked that the complaint be filed against the Calhoun County Department of Transportation, Division of Highways, Calhoun County Schools Department of Transportation and Support Services, and the West Virginia Department of Transportation, Division of Highways.  The Complaint was filed under West Virginia State Educational Policy 2419, Section 504, other Sections of the Rehabilitation Act of 1973, and the Americans with Disabilities Act ("ADA"),  claiming that those agencies had discriminated against Corson as a disabled veteran and parent of a school age child because of his disability.

In the 2002 OCR complaint Corson complains of water covering the low water bridges on 15/2 when it rains, and that Board of Education Policy would not allow school buses to cross these low water bridges during the times they were covered with water.  Because the school "refuses to cross low water bridges when they are covered with water," Corson claimed he was being discriminated against by these public agencies because he, a disabled veteran, was "denied access to regular programs provided to individuals who do not have to cross low water bridges."  He was also being discriminated against "as a disabled parent of a school-aged child" because the school bus would not deliver his son to his home when the bridge was water-covered.  He concludes: "I, the parent, am forced by this current School Policy, to be responsible for driving my son twice across low water bridges that the school bus refuses to cross because they are too dangerous."

Corson next complains in the 2002 OCR complaint that the County and State Divisions of Highways and Departments of Transportation discriminated against him in violation of Title 38, and Title II of the ADA, "because of his disability" by not providing him with adequate bridges with which to cross flood waters.  The bridges are underwater "whenever it rains," and they are deemed by the Department of Transportation to be too dangerous to cross when  water-covered.  Corson

therefore claimed he had not been provided equality in participation and benefits as afforded "those who do not have to cross low-water bridges." He further argued that the county Board of Education denied him access to or the ability to participate in "adequate transportation" for his son; adult education "because rain prohibits me from crossing the low water bridges on my road... so as to attend these classes;" and subjects his son "and all students who live past low water bridges" to the routine taking or denial of credits...earned because of missing too much school.

In the OCR Complaint Corson noted repairs he made to his driveway were continuously being washed away, making it impossible for him to access his driveway any day it rained. Further, because of the state of disrepair of the bridge, water running down the road "has eroded the road bed and the entrance to my driveway so that no repairs made by me to my driveway are sustainable and the first rain again washes away my repairs."

In his OCR Complaint, filed in August 2002, Corson asked for the following remedies: That both low water bridges and the erosion they caused on the road be replaced with new bridges; that the County and State Departments of Transportation repair and dredge the creek, to correct the road erosion which years of neglect and refusal to provide regular maintenance had created; that the current road be brought back to its original height which the Department of Transportation had caused due to lack of repair; that the County and State Departments of Transportation repair the creek and private entrance to Corson's driveway, which years of erosion had created; that the County and State Departments of Transportation pave the road in its entirety; that the County School bus be returned to its original route, "so that parents do not have to drive 6 miles on days the school bus will not travel 15/2;" and that the State and County Boards of Education policies, "which refuse[d] to let school out" on days when a flood watch or warning is issued, be changed to allow school to be

dismissed when a flood watch or warning was issued until such time as all low water bridges in the county had been replaced.

Corson contends that on January 8, 2003, less than two months after his 11-13-2002 U.S. Office of Civil Rights complaint filing, his son was attacked and beaten at a Calhoun County school. He contends that, as a result of this alleged attack, his son's grades dropped to D's and F's, concluding:

> It forced us to move to Georgia where my son graduated in 2007. Plaintiff argues that this was part of the conspiracy to coerce and intimidate plaintiff thru his son. It worked!

To paraphrase the Complaint, the State and County Departments of Transportation identified a problem with the low water bridge on 15/2 in or about 1993. The Department of Transportation obtained an easement in or about 1996 to make corrections to the low water bridge. Plaintiff moved to the property in 1997, after the problem with the road and driveway was already occurring, and found water from the low water bridge flowing down road 15/2 and crossing his driveway, eroding the culvert gravel and dirt from around the culverts at times to a depth of 4 feet. The driveway became impassable. In or about August 2002, Corson filed his complaint with the U.S. Board of Education Office of Civil Rights, claiming, in part, discrimination by the State and County Departments of Education and Transportation due to the condition of the bridges. In January 2003, Corson's son was attacked and beaten at a Calhoun County school. He moved with his son in 2004, to Georgia, remaining there until his son graduated in 2007. He then moved back to the property in "late spring of 2008." He did own the property the entire time, but did not live there from sometime in 2004 until late spring of 2008. Apparently, the problem with the low water bridge, which existed when Corson left the property in 2004, remained when he returned four years later, in late spring

2008. On February 25, 2009, Plaintiff wrote to Mr. Boyd Dotson of the State Department of Transportation Division of Highways, complaining of the problem and asking for relief. The letter was never answered and no further contact with the Department of Transportation occurred. On May 8th and 9th of 2009, flooding caused approximately a ton or more of sand and gravel to be deposited across Corson's driveway as a result of water dammed by the low water bridge "which causes high water to run down 15/2 and across this plaintiff's driveway." He was unable to cross this large pile of dirt dropped by the high water.

Corson filed his Complaint in this Court on May 15, 2009.

### III. Discussion

The undersigned has carefully reviewed the parties' motions and related memoranda, and because the plaintiff is *pro se*, has liberally construed the plaintiff's pleadings. See Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1971)(holding *pro se* complaint to less stringent standards than formal pleadings drafted by lawyers).

### A. First Motion to Amend the Pleadings

On September 10, 2009, Corson filed his "First Motion to Amend the Pleadings" [Docket Entry 42]. Defendant Mattox filed his Response objecting to the Motion on September 22, 2009 [Docket Entry 52]. Corson filed his "Memorandum Answer to Defendant's Response," which the undersigned considers as his "Reply" on September 29, 2009 [Docket Entry 56]. In his Motion to Amend, Corson seeks to add a claim under the Americans with Disabilities Act of 1990 ("ADA").

Federal Rule of Civil Procedure 15(a)(2) requires that the Court "freely" grant leave to amend "when justice so requires." Leave to amend should be denied only when the moving party has acted in bad faith, the opposing parties would incur undue prejudice, or when the amendment would be

futile.  See Edwards v. City of Goldsboro, 178 F.3d 231 (4th Cir. 1999).  The undersigned does not find any evidence that Corson acted in bad faith, that the defendants would be prejudiced, or that the amendment is futile at this point in the proceedings.  Accordingly, the undersigned **RECOMMENDS** Corson's "First Motion to Amend the Pleadings" [Docket Entry 42] be **GRANTED** and that the First Amended Complaint attached to Corson's Motion be filed.  The undersigned further **RECOMMENDS** no Answer be required of Defendants, as they have each already addressed a possible ADA claim in their own pleadings.

**B.  Second Motion to Amend the Pleadings**

On October 14, 2009, Corson filed his "Second Motion to Amend the Pleadings" [Docket Entry 78].  In his Motion he seeks to add a denial of due process claim.  The undersigned does not find Corson is acting in bad faith or that the defendants would be unduly prejudiced by the allowance of the amendment.  The undersigned does, however, find the amendment would be futile.  In the proposed Second Amended Complaint Corson states:

> The violation of procedural due process, was a violation under color of law by the Commissioner of the West Virginia's Department of Transportation, Mr. Fred VanKirk.  Mr. Roten, District Administrator of the West Virginia Department of Transportation, (DOT) had ordered the low water bridge on 15/2 "rebuilt."  But Commissioner VanKirk intervened and ordered that the low water bridge on 15/2 not be "rebuild" [sic].  That order came prior to any due process being provided by the West Virginia DOT or the West Virginia BOE.  Thus, procedural due process was thwarted and plaintiff's civil rights were violated.

First, Corson cites no law that would allow this Court to determine that a decision by the State Commissioner of Transportation overriding a decision by a District Administrator, even if that is what occurred, would constitute a denial of due process under the Fifth and Fourteenth Amendments to the United States Constitution.  West Virginia Code section 17-2A-8 provides that the

commissioner may, among other duties: 1) Exercise general supervision over the state road program and the construction, reconstruction, repair and maintenance of state roads and highways; 2) Determine the various methods of road construction best adapted to the various sections and areas of the state and establish standards for the construction and maintenance of roads and highway in the various sections and areas of the state; 3) Exercise jurisdiction, control, supervision and authority over local roads, outside the state road system, to the extent determined by him or her to be expedient and practicable; and 4) Delegate powers and duties to his or her appointees and employees <u>who shall act by and under his or her direction</u> and be responsible to him or her for their acts.

The undersigned therefore finds that, even if Commissioner VanKirk "intervened" in the decision by his District Administrator to rebuild the bridge, that act does not constitute a denial of due process as contemplated by the Constitutions of the United States or the State of West Virginia.

Second, even if the Court did find a due process violation, this claim would clearly be barred by the Statute of Limitations.  Mr. VanKirk's so-called "intervention" occurred, if at all, before his letter to Corson in 2001, which unequivocally stated: "We do not have any current plans to replace this crossing at this time."  As discussed later in this Report and Recommendation, in the event Congress has omitted a statute of limitations, the statute of limitations is that which is most applicable to the federal action in the State.  W. Va. Code section 55-2-12 provides for a two year statute of limitations for personal actions for which no limitation is otherwise prescribed.  This includes both personal actions for damage to property and personal injury. The undersigned finds the statute of limitations on any due process claim would therefore have run, at the latest, sometime in 2003**.**

For all the above reasons, the undersigned United States Magistrate Judge finds Corson's

proposed amendment would be futile and therefore **RECOMMENDS** his Second Motion to Amend [Docket Entry 78] be **DENIED**.

## C. Motions to Dismiss

In considering the propriety of a Rule 12(b)(6) dismissal, the standard of review is whether the complaint, accepting the allegations as true, allows a recovery.  Waterford Citizens' Ass'n v. Reilly,  970 F.2d 1287 (4th Cir. 1992).

## 1. Roger Propst, Calhoun County Superintendent of Schools

Although the undersigned United States Magistrate Judge concludes both Defendants' Motions to Dismiss should be granted, certain grounds for dismissal apply particularly to Propst, the Calhoun County Superintendent of Schools, and the undersigned addresses those first.  The only claims asserted by Plaintiff in his Complaint that pertain to  Propst are: 1) The County school bus "has for the same 12 year period of time used Plaintiffs drive way to turn the bus around," breaking down both the culverts now used to pass creek water under the Plaintiff's driveway; 2) The Calhoun County paving policy does not allow paving where school buses do not travel past low water bridges; and 3) The County Division of Highways, State Department of Transportation, and the Calhoun County Superintendent of Schools conspired to retaliate against him for his advocacy on behalf of disabled children within the schools and his complaint filed with the OCR.  The retaliation was in the form of "refusing to provide relief from the constant erosion and damage to the driveway and culvert and repairs made to it as high water runs down 15/2 and across plaintiffs driveway."

Corson's "Claims for Relief" are to direct the Department of Highways to correct the road "to eliminate the flood water from eroding plaintiff's driveway or passing over Plaintiff's driveway from road 15/2;"  to direct the Division of Highways to replace the damaged culverts and rebuild his

private driveway; to direct the <u>Department of Transportation</u> to repair his drive on a daily basis until a permanent correction of the road; that the <u>Department of Transportation</u> be directed to build a permanent safe bridge; that the <u>Department of Transportation</u> take steps to allow the creek to carry the entire burden of water "under the Plaintiff's driveway, not down or across his driveway;" and that he be awarded money damages of $250,000.00 for the loss of two vehicles and "13 years of repair to his driveway and for physical and mental pain and for mental, and physical suffering "from the continuous need to repair plaintiff's driveway and continuos mental anguish from walking through flood water to get to his place of residence and from having to stay with friends or in motels during the 24 hour time period necessary for the flood water to recede."

Even accepting Corson's allegations as true, and under a liberal reading of the pleadings, the undersigned finds Corson has not stated a claim against Roger Propst upon which relief can be granted. Corson does not cite, and the undersigned could not find any statute or case law which would permit, much less require the County Superintendent of Schools to provide the remedy Corson seeks. West Virginia law vests in the State Commissioner of Highways the sole power to contract for the construction, improvement, and maintenance of roads. W. Va. Code 17-2A-2 ("The commissioner . . . shall have direct and full control, management and supervision of the entire state road program and system . . . .") For this reason alone, the undersigned recommends Propst's Motion to Dismiss be granted.

Additionally, W.Va. Code section 29-12A-1 limits liability of political subdivisions and provides immunity to political subdivisions in certain instances and regulates the costs and coverage of insurance available to political subdivisions for such liability. The West Virginia Supreme Court of Appeals has already held that qualified tort immunity provisions of the Governmental Tort Claims

11

and Insurance Reform Act do not violate equal protection principles of the State Constitution. Const. Art. 3, section 10; Pritchard v. Arvon, 413 S.E.2d 100, (W.Va. 1991).

W. Va. Code Section 12A-3(c) provides that a county board of education is a "political subdivision." 3(d) defines "scope of employment" as performance by an employee acting in good faith within the duties of his office or tasks lawfully assigned by a competent authority but does not include corruption or fraud. Section 29-12A-5(b) provides that an employee of a political subdivision is immune from liability unless one of the following applies: 1) His acts or omissions were manifestly outside the scope of employment or other official responsibilities; 2) His acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or 3) liability is expressly imposed upon the employee by a provision of this code. The undersigned finds the acts contained in the Complaint that can be at all attributed to the county school system consist of a school bus using Corson's driveway to turn around and not permitting buses to travel over low water bridges when water covers them. These decisions, if Propst's to make, are clearly within the scope of his employment as Calhoun County Superintendent of Schools.[1] Further, no liability is expressly imposed upon Propst by a provision of the West Virginia Code. Finally, although Corson alleges the County schools conspired with the Department of Transportation to keep the bridge from being repaired, again, neither the school nor Propst had any authority to repair the bridge, even if either had wanted to do so. Corson's allegations regarding Propst's part in the so-called conspiracy

---

[1]Significantly, and as another basis for dismissal of this action against Propst, the undersigned notes that Corson does not dispute Propst's contention that he was not even hired as Superintendent of Schools until November 13, 2008. Instead he argues that Propst was the Director of the Calhoun County Schools Department of Transportation "at the time of the original incident" and "continues in both a political and educational capacity in the ongoing conspiracy to deprive plaintiff of his Civil Rights . . . ."

is that, by not allowing buses to drive over low-water bridges, he was <u>permitting</u> the Department of Transportation to avoid repairing the bridge. The alleged conspiracy expressly involved "refusing to provide relief from the constant erosion and damage to the driveway and culvert and repairs made to it as high water runs down 15/2 and across plaintiffs driveway." The undersigned finds Propst simply had no authority to provide or even to refuse to provide the relief Corson says was denied him.

In addition, 29-12A-5(a)(6) provides that a political subdivision is immune from liability if a loss or claim results from snow or ice conditions or temporary or natural conditions on any public way or other public place due to weather conditions, unless the condition is affirmatively caused by the negligent act of a political subdivision. Here the loss to Corson is caused, as he states himself, by rain. He cannot travel over the bridge when it rains, because the bridge becomes covered by water. The complaint itself also plainly identifies this as a temporary condition, in that the letter he sent to the Division of Highways in 2002, complained of the "low water bridge and its detrimental effects <u>during rain</u>." (at 23, emphasis added), and that expressly, "[o]n May 8th and 9th of 2009, flooding caused approximately a ton or more of sand and gravel to be deposited across Plaintiff's driveway . . . ."

Additionally, Section 29-21A-6(a) provides:

An action against a political subdivision to recover damages for . . . loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, except as provided in subsection (b) of this section, shall be brought within two years after the case of action arose or after the loss was discovered or reasonably should have been discovered, whichever last occurs or within any applicable shorter period of time for bringing the action provided by this code. This section applies to actions brought against political subdivisions by all persons. . . .

Propst argues that Corson's cause of action arose in 1996, when the bridge was first scheduled for repair. Corson responds that there is not a statute of limitation as to an "ongoing conspiracy," arguing that "every time it rains and water runs down 15/2 and across plaintiff's driveway and the State DOH takes no action shows that an ongoing conspiracy under both Federal law and State law exists on a continuing bases [sic]." He further argues:

> The facts show that the conspiracy of prevention of access to programs and service offered to others because the state continues to take no action under stated or Federal laws to correct the problems. See Summers v. Sims, 142 W.Va. 640, 97 S.E.3d 295(1957). This provision, 17-4-33, must of necessity include the duty to construct any bridge safely as well as to maintain it safely.

(Emphasis added). Again, Propst clearly had no duty or even ability to construct or maintain the bridge. Further, Corson responds that Propst's "conspiracy" with the DOH consists of the following:

> Mr. Propst is implicated in preventing School buses or other forms of School transportation of children from crossing low water bridges in Calhoun County, thus continuing to collude with the Calhoun DOH and the West Virginia DOH to prevent low water bridge from being replaced.

In Wellman v. State of W. Va. by Rockefeller, 637 F.Supp. 135 (S.D.W.Va. 1983). Chief District Judge Haden held: "Terse, conclusory references to conspiracy will not save an otherwise meritless complaint." (Citing Ostrer v. Aronwald, 567 F.2d 551 (2d Cir. 1977); U.S. ex rel Simmons v. Ziblish, 542 F.2d 259 (5th Cir. 1976); Tosa v. Hooks, 568 F.Supp. 616 (E.D.Pa. 1983); Rende v. Rizzo, 418 F.Supp. 96 (E.D.Pa. 1976). The undersigned finds Corson's allegation of a conspiracy between Propst and the DOH is conclusory.

Further, even if the Court found these allegations were not totally meritless, the cause of action would still fail on statute of limitations grounds. Corson himself states:

> Further, the evidence of a Conspiracy will show both a retaliate [sic] against this plaintiff for his advocacy of handicapped children in the Calhoun County Department

> of Education system and Board of Education (BOE) and of the Calhoun County Division of Highways and retaliation <u>ending in </u>coercion against plaintiff's son in an effort to coerce Plaintiff into silence.

By Corson's own words, the conspiracy ended in coercion against his son. Corson alleges this "coercion" was an attack on his then school-age son at a Calhoun County school in January 2003. He also alleges that as a result, he was "forced" to move to Georgia where his son graduated from high school in 2007. Clearly, any cause of action based on conspiracy accrued, at the latest, when he moved away from the area in 2004. The statute of limitations against Propst therefore ran, at the latest, sometime in 2006. The Complaint was filed in May 2009.

Propst further argues that Corson's damages claim of $250,00.00 is also improper and should be stricken. Pursuant to 12A-6(d), the complaint against a political subdivision or an employee of a political subdivision to recover damages shall include a demand for a judgment for the damages that the judge or jury finds that the complainant is entitled to be awarded, but shall not specify in the demand any monetary amount for damages sought. Corson's demand for $250,000.00 must therefore be stricken.

Finally, 29-21A-13 provides, in pertinent part:

(a) Actions against all political subdivisions within the scope of this article shall be brought in the county in which the situs of the political subdivision is located or in the county in which the cause of action arose.

(b) Suits instituted pursuant to the provisions of this article shall name as defendant the political subdivision against which liability is sought to be established. <u>In no instance may an employee of a political subdivision acting with the scope of his employment be named as a defendant.</u>

(Emphasis added). In <u>Hose v. Berkeley County Planning </u>Comm'n., 460 S.E.2d 761 (W. Va. 1995), the plaintiff landowners sought damages for flooding of their property. They named William Teach,

the county engineer, as one of the defendants. The circuit court dismissed Teach, specifically finding that under W.Va. Code 29-12A-13(b), Mr. Teach could not be individually liable. The West Virginia Supreme Court of Appeals agreed with this conclusion.

For all the above reasons, the undersigned **RECOMMENDS** Propst's Motion to Dismiss Corson's Complaint be **GRANTED** and the complaint be **DISMISSED**.

**2. Paul A. Mattox, Jr.'s and the West Virginia Department of Transportation, Division of Highways' Motion to Dismiss.**

Defendant Mattox argues that Corson's complaint against him is barred by sovereign immunity. A State and its political subdivisions are entitled to sovereign immunity for the performance of governmental functions absent a clear and unequivocal statutory expression of intent to waive immunity. See Pittsburgh Elevator Co. v. W. Va. Bd. of Regents, 310 S.E.2d 675 (W. Va. 1983). The Department of Transportation, Division of Highways, and consequently, Mattox, in his official capacity is, in effect, the State. See Roach v. Burke, 825 F.Supp.116 (N.D.W.Va 1993). Mattox, however, may still be sued in his individual capacity for money damages. See id. at 118 ("State officials sued in their individual capacities are 'persons' subject to suits for damages under section 1983, and the Eleventh Amendment does not bar such suits in federal courts, even if the action was taken in the defendant's official capacity."). Thus, Mattox may still be sued even if the alleged wrongdoing was conducted while in the performance of his official capacity. Id.

Mattox argues that if he is being sued in his individual capacity, however, he is afforded qualified immunity. In J. H. v. W.Va. Div. of Rehabilitation Services, 680 S.E.2d 392 (W.Va. 2009), the West Virginia Supreme Court of Appeals held:

If a public officer is either authorized or required, in the exercise of his judgment and

discretion, to make a decision and to perform acts in the making of that decision, and the decision and acts are within the scope of his duty, authority, and jurisdiction, he is not liable for negligence or other error in the making of that decision, at the suit of a private individual claiming to have been damaged thereby.

In this case, Mattox's decision, if it was indeed his to make, in regards to the low water bridges on Corson's road is clearly within the scope of his duty, authority, and jurisdiction. He is therefore not liable to Corson for negligence or other error in the making of that decision.

The undersigned therefore **RECOMMENDS** Mattox's Motion to dismiss be **GRANTED** and the complaint be **DISMISSED**.

**3. Federal Causes of Action**

**a. Rehabilitation Act Claim**

Corson's Amended Complaint alleges the defendants violated the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. sections 701-797(b)(1995), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. sections 12101-12213(2000). The Rehabilitation Act provides, in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

Title II of the ADA similarly provides:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

The ADA and the Rehabilitation Act are generally construed to impose the same requirements. See Baird ex rel. Baird v. Rose, 192 F.3d 462 (4th Cir. 1999). This principle follows

from the similar language employed in the two acts.  It also derives from the Congressional directive

that implementation and interpretation of the two acts "be coordinated to prevent [] imposition of

inconsistent or conflicting standards for the same requirements under the two statutes."  Id. at 468

(citing 42 U.S.C. section 12117(b)).   Thus, to state a cause of action under the ADA or the

Rehabilitation Act, Corson must show: 1) he has a disability as defined by the statute; 2) he is

otherwise qualified for the benefit in question; and 3) he was excluded from the benefit on the basis

of his disability.  Id. at 467 (citing Doe v. Univ. of Md. Med. Sys. Corp., 50 F.3d 1261 (4th Cir.

1995). (Emphasis added).

     While the general requirements of a disability discrimination claim under the ADA and the

Rehabilitation Act are the same, the standard of causation is not.  Rehabilitation Act plaintiffs must

demonstrate that the discrimination occurred "solely by reason of" their disability. 29 U.S.C. section

794(a).  ADA plaintiffs, on the other hand, need meet a lesser standard that of showing their

disability played a motivating role in the discriminatory action.  See Id. at 468-470.  The undersigned

finds Corson does not meet either of these requirements, however.  The undersigned therefore does

not address the other two requirements of both Acts,  that he have a disability as defined by the state,

and that he otherwise qualifies for the benefits in question.

     Corson's pleadings themselves indicate that the acts or omissions of which he complains did

not occur solely by reason of his disability and were not motivated by his disability.  The Complaint

begins by stating that the Department of Transportation purchased the easement in 1996, to begin

and complete the project- "which purpose was to 'rebuild' the unsafe bridge."  It goes on to state that

the D.O.T. never completed the project.  Subsequently, "[b]ecause the [D.O.T.] never began or

completed [the] project [], the plaintiff, after moving to the property in 1997 found water continuing

to flowing [sic] down road 15/2 and crossing the driveway eroding the culvert gravel and dirt from around the culverts. . . . ." Corson simply cannot show that the failure to complete a project begun and terminated before he even moved to the road, could have been motivated by his disability. Further, there is absolutely no showing that the condition of the bridge affected Corson, due to his disability, any more than it did his non-disabled neighbors on the same road. Corson himself attached to his Complaint a Petition to Calhoun County Board of Education and West Virginia Department of Hi-Ways"[ sic] which states:

> We, the undersigned parents, grandparents, taxpayers, residents and users of Calhoun County Road 15/2 do hereby deplore the conditions of Road 15.2 We ask that the road be repaired immediately.

> We further protest the proposed closing of Road 15/2 to Calhoun County School Bus pickup of our children.

> We believe that such a move is in violation of both West Virginia laws and Federal laws. We believe that such a move is not in the best interest of our children who now attend and will in the future attend Calhoun County Schools.

The Petition is signed by thirteen individuals other than Corson. There is no allegation that any, much less all of the thirteen individuals were disabled.

In his "Answering Brief" to Defendants' Motions to Dismiss, Corson argues:

> Defendants has [sic] characterized plaintiffs complaint as "[defendant] failed to repair or modify a bridge on a public roadway near his home or repair culverts nearby," and "there is no constitutional right to preferential treatment when it comes to the State performing bridge or culvert repairs or upgrades." (Motion at 6, 7); Defendant has mis-construed the facts in this case and plaintiff argues that there is a West Virginia State Constitutional right to both this plaintiff and to school children and their parents and a United States Constitutional right not to be required to cross unsafe bridges maintained as unsafe bridges by the State. This constitutional right is vested in both the West Virginia Constitution . . . and in the United States Constitution at the 14th Amendment. Since defendants [sic] actions are grounded in the unlawful act of refusing to repair an unsafe bridge in violation of state law, 17-4-33, the first requirement of an unlawful act under 42 U.S.C. 1985(3) has been proven.

> Also, no discrimination can be conducted based on severity of disability . . . . When plaintiff was a young man he could successfully brave the cold mountain water under emergency conditions. Plaintiff's current disabilities and illnesses no longer allow such bravado or stupidity.

(Emphasis added). The undersigned finds by his own words Corson cannot meet the requirement that he was discriminated against solely on the basis of his disability or even that his disability is a motivating factor in any discrimination. There is no question that Defendants themselves deem the low water bridge (and most likely all low-water bridges) unsafe for <u>all</u> drivers when water-covered. It is undisputed that the defendants themselves state that <u>no one</u> should cross a low water bridge when it is water-covered. It is undisputed that the school buses are not permitted to cross the low water bridge when it is water-covered. Although Corson attempts to show that it is his "current disabilities and illnesses" that do not permit him to "successfully brave the cold mountain water," such an attempt, even at a younger, healthier age was, in his own words, "bravado" or "stupidity."

The undersigned United States Magistrate Judge finds Corson's claims do not meet the requirements of either the ADA or the Rehabilitation Act, and should therefore be dismissed as to all Defendants.

**b. Statute of Limitations**

Corson alleges the failure to repair the bridge is the result of a conspiracy between the defendants to retaliate against him for his advocacy of handicapped children in the Calhoun County school system. Again, this claim must fail on statute of limitations grounds alone. The easement was purchased by the Department of Transportation, at the latest, in 1996. The bridge was not repaired, however, and the problems existed before Corson even moved to the residence sometime in 1997. Defendants argue that the statute of limitations therefore began in either 1996 or 1997. The

undersigned agrees with Defendants that Corson's claim, if any, accrued by 1997, when he moved to the residence, the bridge had not been repaired, and the problem was already occurring.

Congress occasionally omits statutes of limitation in civil rights legislation, and did so when it enacted the Rehabilitation Act and ADA. Wolsky v. Medical College of Hampton Roads, 1 F.3d 222(4th Cir. 1993). In the event of such an omission, 42 U.S.C. section 1988(a) provides for the selection of an appropriate common-law statute of limitations, which is most applicable to the federal action. Id.

In Wolsky, the court found that the Virginia Rights of Persons with Disabilities Act was the most analogous state act to the Rehabilitation Act, and applied its statute of limitations, which was one year. In Roe v. County Comm'n. of Monongalia County, 926 F.Supp 74 (N.D.W.Va. 1996), this Court held:

> In West Virginia, the Human Rights Act, W.Va. Code section 5-11-1 et seq., prohibits discrimination in employment, housing and access to public accommodations based on handicap. W. Va. Code section 5-11-2. The Act defines public accommodation to include the services, goods, facilities or accommodations of the state or any political or civil subdivision thereof. The Act contains a 180 day limitations period for filing a claim with the Human Rights Commission. W. Va. Code section 5-11-10. However, the Act also preserves the right to an individual suit in the circuit courts. In McCourt v. Oneida Coal Co., Inc., 188 W.Va. 647, 425 S.E.2d 602, 606 (1992), the West Virginia Supreme Court of appeals applied the two year statute of limitations for personal injury found at W. Va. Code section 55-2-12 to civil actions brought pursuant to the West Virginia Human Rights Act.

This Court concludes that the West Virginia Human Rights Act is the most analogous West Virginia law to the Rehabilitation Act and ADA, and is fully consistent with the Acts and their underlying policies. The undersigned therefore finds that the statute of limitations on Corson's Rehabilitation Act and ADA claims as well as his claim of retaliation based on his advocacy for disabled students ran by 1999.

Corson argues against the statute of limitations, stating:

There is not statue of limitation to an ongoing conspiracy to deprive Constitutional or Federal Civil Rights set forth in Federal Legislation. . . .; Defendant Propst statements in Defense #1: "The plaintiff's own description of his damages, and the time frame wherein the damages occurred clearly established that his claim arose in 1996" However, every time it rains and water runs down 15/2 and across plaintiff's driveway and the State DOH takes no action shows that an ongoing conspiracy under both Federal law and State law exist on a continuing bases.

The facts show that the conspiracy of prevention of access to programs and service offered to others is ongoing because the state continues to take no action under state or Federal laws to correct the problems . . . .

Further, the evidence of a Conspiracy will show both a retaliate [sic] against this plaintiff for his advocacy of handicapped children in the Calhoun County Department of Education system and Board of Education (BOE) and of the Calhoun County Division of Highways and retaliation ending in coercion against plaintiff's son in an effort to coerce Plaintiff into silence.

(Emphasis added). By Corson's own words, the conspiracy and retaliation ended in coercion against his son. Corson alleges this "coercion" was an attack on his then school-age son at a Calhoun County school in January 2003. He also alleges that as a result, he was "forced" to move to Georgia where his son graduated from high school in 2007. Clearly, any cause of action accrued, at the latest, when Corson moved away from the area in 2004. The statute of limitations on his Federal claims therefore ran, at the very latest, sometime in 2006.

For all the above reasons, the undersigned finds all of Corson's claims, including his Rehabilitation Act, ADA, and retaliation claims, are barred by the Statute of Limitations and **RECOMMENDS** his Complaint and Amended Complaint be **DISMISSED**.

## D. Corson's Motion for Summary Judgment

Because the undersigned United States Magistrate Judge has already recommended Corson's Complaint and Amended Complaint be dismissed in their entirety, his Motion for Summary

Judgment in his favor must fail. If the Court decides not to accept the recommendation of the undersigned to dismiss the complaint in its entirety, the Motion for Summary Judgment must still fail as being premature. On June 18, 2009, less than one month after he filed his Complaint, Corson filed a "Memorandum of Points and Authorities on Motion for Summary Judgment" [Docket Entry 15]. Although this document was docketed as a motion, the undersigned finds the document is in actuality a Memorandum in Support of the Motion for Summary Judgment contained within Corson's original Complaint. Under Fed. R. Civ. P. 56(a)(1), such a motion may be filed at any time after either 20 days have passed from commencement of the action or the opposing party serves a motion for summary judgement. Corson's motion was filed prior to either. Even if the Court determines that the Motion for Summary Judgment was timely filed, Corson simply cannot show at this point that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law.

The undersigned United States Magistrate Judge therefore **RECOMMENDS** Corson's Motion for Summary Judgment, whether as contained in his Complaint or in his Memorandum [Docket Entry 15] be **DENIED**.

## RECOMMENDATION

For the reasons herein stated, the undersigned United States Magistrate Judge respectfully **RECOMMENDS**:

Plaintiff's First Motion to Amend the Pleadings [DE 42] be **GRANTED**;

Plaintiff's Second Motion to Amend the Pleadings [DE 78] be **DENIED**;

Defendant Propst's Motion to Dismiss [DE 12] be **GRANTED**;

Defendant Mattox's Motion to Dismiss [DE 31] be **GRANTED**;

Corson's Motion for Summary Judgment [DE 15] be **DENIED**;

Any other motions not specifically resolved by this Report and Recommendation be **DENIED as MOOT;** and

This action be **DISMISSED** and stricken from the Court's docket.

Any party may, within fourteen (14) calendar days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk for the United States District Court for the Northern District of West Virginia is directed to provide a copy of this order to counsel of record and by Certified Mail, Return Receipt Requested, to Plaintiff *pro se.*

Respectfully submitted this 17th day of February, 2010.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE